## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| OLGA BENITEZ | ) | |
| 8150 Barnwood Road | ) | |
| Manassas, VA 20111 | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| SERVE:    ERIC H. HOLDER, JR. | ) | Civil Action No. _____ |
| United States Attorney General | ) | |
| Department of Justice | ) | |
| 950 Pennsylvania Ave., N.W.) | | |
| Washington, D.C.  20530 | ) | |
| | ) | |
| SERVE:    RONALD C. MACHEN, JR. | ) | |
| United States Attorney for the | ) | |
|  District of Columbia | ) | |
| Office of United States Attorney | ) | |
| 555 4th Street, N.W. | ) | |
| Washington, D.C. 20530 | ) | |
| | ) | |
| *Defendants*. | ) | |

## COMPLAINT
### (Jurisdiction and Venue)

1.      Jurisdiction is founded upon the Federal Tort Claims Act, 28 U.S.C.,

Sections 1346(b), 2671-2680 and 39 U.S.C. Section 409.  Prior to the institution of this

action, the claim set forth below was presented to the Department of the Army through

the Office of its Judge Advocate General.  (See Exhibit A, attached hereto).  Six (6)

months have passed without the DEPARTMENT OF THE ARMY having taken final

action, thereby entitling Plaintiff to commence this suit at this time.

2.      Pursuant to District of Columbia Code § 16-2802(c), the claim set forth below was presented to the U.S. Attorney General's Office, the U.S. Attorney's Office, and the Department of the Army through the Office of its Judge Advocate General. Ninety (90) days have passed without the UNITED STATES having taken final action, thereby entitling the Plaintiff to commence this suit at this time.

### PARTIES

3.      At all times relevant hereto Olga Benitez was an adult citizen of Virginia, residing at 8150 Barnwood Road, Manassas, Virginia 20111.

4.      At all times relevant hereto the Armed Forces Institute of Pathology (AFIP) was an agency of the United States of America that held itself out to the public as competent and qualified to provide diagnostic pathology services, by and through its actual and/or apparent agents/servants/employees, including but not limited to Dr. Julie Fanburg-Smith.  Accordingly, the United States is liable for the actions/omissions of AFIP and Dr. Julie Fanburg-Smith in this case, pursuant to the doctrines of agency and/or respondeat superior.

### FACTS COMMON TO ALL COUNTS

5.      On or about 07/01/08, Olga Benitez, age 28, visited Dr. Thomas H. Rhee, an otolaryngologist, in Manassas, Virginia, complaining of a lump in the back of her neck.  Dr. Rhee noted a firm, 2 CM mass in the left posterior neck along the scalp.  He believed the mass was a cyst, but to be safe, he recommended excision and biopsy.

6.      On or about 07/11/08, Dr. Rhee excised the mass and sent the tissue to LabCorp.  The initial diagnosis of Joy Maria Bullin, M.D., LabCorp's pathologist, was "Spindle cell lesion with strong S100 positivity.  Final diagnosis pending outside

2

consultation." Dr. Bullin stated, "This case is being forwarded for expert opinion to the AFIP." The biopsy specimen was sent to AFIP for a final, definitive, diagnosis.

7.      On or about 07/28/08, Dr. Julie Fanburg-Smith, a pathologist employed by AFIP, reviewed the biopsy specimen and diagnosed cellular schwannoma, a benign peripheral nerve sheath tumor.

8.      On or about 08/08/08, LabCorp released its final pathology report, adopting verbatim the interpretation of Dr. Fanburg-Smith. The final pathology report was sent to Dr. Rhee.

9.      On or about 02/16/09, Olga Benitez returned to Dr. Rhee's office, complaining of swelling in her neck. The plan was to watch the neck and, if the swelling persisted, the growth would be excised.

10.     On or about 03/25/09, Olga Benitez returned to Dr. Rhee's office for excision of the neck mass. Dr. Rhee's clinical impression was "very attached recurrent schwannoma." Dr. Rhee recommended an operative excision.

11.     On or about 04/21/09, Olga Benitez underwent an operative excision of the neck mass at the Prince William Ambulatory Surgery Center, which was performed by Dr. Rhee. The surgical specimen was sent to pathology for evaluation.

12.     On or about 04/22/09, Robert VanKirk, M.D., a pathologist at Prince William Hospital, diagnosed a "benign spindle cell tumor, favor leiomyoma," pending staining. Staining for SMA was strongly positive, confirming a smooth muscle origin. Dr. VanKirk's final diagnosis was "Soft tissue with leiomyoma."

13.     On or about 04/29/09, Olga Benitez returned to Dr. Rhee's office for a post-operative follow-up for the neck mass.  Examination was within normal limits.  Dr. Rhee's final diagnosis was "swelling in the head and neck."

14.     On or about 08/28/09, Olga Benitez visited Dr. Cynthia A. Dougherty, a surgeon in Manassas, Virginia, complaining of a recurrent neck mass.  Olga Benitez told Dr. Dougherty that the mass had been removed in July 2008, and again, in April 2009.  Dr. Dougherty reviewed the records and noted that the second excision revealed a 3.2 cm mass.  Dr. Dougherty measured the mass to be 4 x 6 cm.  She also noted that the mass was firm and discolored in areas under the skin.  Dr. Dougherty referred Olga Benitez to Georgetown University for definitive treatment.

15.     On or about 09/08/09, Olga Benitez was evaluated by Dr. Stephen Evans, a surgeon at Georgetown University.  Physical examination revealed a large mass about 6 cm across in both directions.  It extended through the skin.  There was obvious anterior fixation.  Along the anterior cervical triangle there were, at least, two palpable lymph nodes, each measuring greater than 1 cm.  Dr. Evans ordered an MRI to evaluate the mass.

16.     On or about 09/21/09, Olga Benitez underwent an MRI of the neck at Tyson's Corner Diagnostic Imaging.  The interpreting radiologist, Dr. Alexander S. Mark, found a 4.7 x 3.7 x 4.2 cm soft tissue mass in the left suboccipital region of the neck, "displacing and possibly invading the left trapezius muscle."  Dr. Mark also found "extensive left posterior triangle lymphadenopathy," the largest lymph node measuring .20 mm x 9 mm.  According to Dr. Mark, "[t]he presence of adenopathy raise[d] the possibility of malignant degeneration."  Dr. Mark recommended surgical resection.

4

17.     On or about 09/29/09, Olga Benitez returned to Dr. Evans.  According to Dr. Evans, the MRI of the neck revealed a 5 cm mass in the left posterior subcutaneous plane with displacement of the trapezius.  There was also significant left posterior triangle lymphadenopathy.  Given these findings, Dr. Evans believed the mass was "an obvious malignancy."  Dr. Evans referred Olga Benitez to Dr. Bruce Davidson, a head and neck surgeon at Georgetown University.

18.     On or about 09/30/09, Olga Benitez was evaluated by Dr. Davidson. Physical examination revealed a 6 cm x 5 cm left upper neck mass.  There were two palpable lymph nodes inferior to the mass, measuring 1.5 x 1.5 cm and 1.5 x 2 cm respectively.  There were also small, prominent lymph nodes at the posterior aspect of the left submandibular gland.  Dr. Davidson's impression was "[r]ecurrent soft tissue tumor (presumed sarcoma) now with indication of nodal metastases."  Dr. Davidson recommended surgery.

19.     On 10/19/09, Olga Benitez underwent excision of her left neck mass and a left modified radical neck dissection with reconstruction, which was performed by Dr. Davidson at Georgetown University Hospital.  Dr. Davidson indicated that the recurrence measured 6 cm with palpable nodal disease at level 5.  A 10 x 10 defect was resected from the left neck, from level 2 through level 5.  Nodal disease was resected away from the lower aspect of level 5.  At least two enlarged and firm lymph nodes were seen.  Dr. Davidson's post-surgical diagnosis was (1) Left neck malignant soft tissue tumor; and (2) Left neck nodal metastases.  Pathologic review of the surgical specimens revealed high-grade cancer, most consistent with a peripheral nerve sheath tumor.  The tumor measured

4.4 cm in greatest diameter and exhibited numerous mitotic figures and coagulative
necrosis.

20.     Pathology from the resection at Prince William Hospital on 4/21/09, was
reviewed at Georgetown University Hospital and interpreted as "neoplastic spindle cell
proliferation, favor low-grade sarcoma."  The tumor, in April 2009, was interpreted to be
well circumscribed, partially encapsulated, with five mitoses per 10 high power fields and
no evidence of necrosis.

21.     On or about 11/19/09, Olga Benitez was evaluated by Dr. K. William
Harter, a radiation oncologist at Georgetown University Hospital.  Dr. Harter felt that she
was "at extraordinarily high risk for local recurrence given the high grade of the tumor
and the fact that her definitive resection represented the third surgical intervention in this
region."  Arrangements were made to begin IMRT radiation treatments.

22.     On or about 11/30/09, Olga Benitez underwent a PET CT at Georgetown
University to evaluate distant metastases.  There was a "1 cm node with increased FDG
uptake with a maximal SUV of 4.0" in the right axilla.  There was "focal peripheral FDG
increased concentration in the right vastas lateralis muscle.  According to Dr. Justin Lee,
the interpreting radiologist, the "single, small hypermetabolic right axillary lymph node
[was] likely reactive."  Accordingly, Dr. Lee recommended close follow-up.

23.     Olga Benitez underwent IMRT radiation treatments from on or about
12/09/09 to on or about 02/02/10.

24.     On or about 10/15/10, Olga Benitez underwent a PET CT at Georgetown
University to evaluate distant metastases.  Diffuse areas of brown adipose tissue limited
evaluation of the neck and supraclavicular regions.  It was, therefore, not possible to rule

out cervical adenopathy.  A single non-enlarged hypermetabolic right axillary lymph

node was found, which was "likely reactive."  The interpreting radiologist, Sejal Amin,

M.D., recommended clinical correlation and/or follow-up.

25.     On or about 02/07/11, Olga Benitez underwent an MRI of the neck at

Georgetown University to evaluate distant metastases.  Sub-centimeter lymph nodes were

found in the left and right neck at level IIA.


**COUNT I**
**MEDICAL NEGLIGENCE**
(Against the United States)

26.     The allegations contained in paragraphs 1 through 25 of the Complaint are

incorporated by reference as if specifically pled herein.

27.     At all times relevant hereto, the United States, by and through its actual

and or apparent agents/servants/employees, including but not limited to Dr. Fanburg-

Smith, owed Olga Benitez a duty to exercise the degree of care and diligence ordinarily

exercised by reasonably prudent pathologists in the District of Columbia under the same

or similar circumstances of this case.

28.     The United States, by and through its actual and/or apparent agents/

servants/ employees, including but not limited to Dr. Fanburg-Smith, breached its duty of

care to Olga Benitez and was, therefore, negligent, by:

a.      Failing to timely diagnose the Plaintiff's head and neck cancer and refer

her for timely, appropriate treatment;

b.      Failing to properly prepare the specimens and/or slides of the tissue

obtained from the 07/11/08 neck mass excision;

c.      Failing to properly conduct a gross examination of the specimens obtained from the 07/11/08 neck mass excision;

d.      Failing to properly conduct a microscopic examination of the specimens obtained from the 07/11/08 neck mass excision;

e.      Failing to conduct a proper pathological examination of the specimens obtained from the 07/11/08 neck mass excision;

f.      Failing to properly review, evaluate, appreciate, interpret the significant pathological findings present in the specimens and/or slides of the tissue obtained from the 07/11/08 neck mass excision;

g.      Failing to properly report all of the significant pathological findings present in the specimens and/or slides of the tissue obtained from the 07/11/08 neck mass excision; and

h.      By committing other acts of negligence as discovery may reveal.

29.      As a direct and proximate result of the negligence of the United States as described above, Olga Benitez suffered the following damages:

a.      A 15-month delay in the diagnosis and treatment of her cancer;

b.      A spread of her cancer to a greater size and stage of disease;

c.      Additional and more extensive treatment modalities than what she likely would have required had the cancer been diagnosed 15 months earlier;

d.      A loss of past and future earnings;

e.      A loss of past and future household services;

f.      Substantial hospital, physician, surgical, radiation, rehabilitative, psychological and other past and future medical and out of pocket expenses, including but not limited to, the expenses of her last illness;

g.      Severe physical, mental, and emotional pain and suffering, mental anguish, emotional distress, including but not limited to, the fear of recurrent cancer, the loss of enjoyment of life; and

h.      Any and all damages recoverable by law.

WHEREFORE, the Plaintiff, Olga Benitez demands judgment against the United States in the amount of $THREE Million Dollars ($3,000,000.00) together with pre and post-judgment interest, the costs of these proceedings, and any other relief this Court deems just and proper.

Respectfully submitted,

OLGA BENITEZ
By Counsel

By:     /s/ William E. Artz
        William E. Artz, Esquire, DC Bar #346163
        Andrew J. Waghorn, Esquire, DC Bar #565595
        WILLIAM E. ARTZ, P.C.
        1700 N. Moore Street, Suite 1010
        Arlington, VA  22209
        Tel: (703) 243-3500
        Fax: (703) 524-8770
        wartz@artzlawfirm.com
        awaghorn@artzlawfirm.com

        *Counsel for Plaintiff*
        *Olga Benitez*